MATTHEW A. LESNICK (SBN 177594)
   matt@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
315 W. Ninth Street, Suite 705
Los Angeles, CA  900015
Tel:   (213) 493-6496
Fax:  (213) 493-6596

TONI J. JARAMILLA (SBN 174625)
   Toni@tjjlaw.com
MAY MALLARI (SBN 207167)
   May@tjjlaw.com
TONI J. JARAMILLA, A Professional Law Corp.
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Tel:   (310) 551-3020
Fax:  (310) 551-3019

Attorneys for Plaintiffs Carla Morais and Shirlei Silva

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FLAVIA LANINI,<br><br>               Debtor.<br>_____<br><br>CARLA MORAI and SHIRLEI SILVA,<br>individuals,<br><br>               Plaintiffs,<br><br>     v.<br><br>FLAVIA LANINI,<br><br>               Defendant. | Case No. 2:22-bk-13026-DS<br><br>Chapter 7<br><br>Adv. No. _____<br><br>**COMPLAINT TO DETERMINE DEBT TO BE NONDISCHARGEABLE UNDER §§ 523(a)(2)(A), 523(a)(4), AND 523(a)(6)**<br>_____<br><br>[Status Conference to be Set by Court-Issued Summons] |

Plaintiffs, Carla Morais and Shirlei Silva allege:

### JURISDICTION AND VENUE

1.      Pursuant to 28 U.S.C. §§ 1334 and 157 and the General Order of the United States District Court of the Central District of California referring all matters relating to bankruptcy to the bankruptcy judges, this Court has jurisdiction over the above-captioned adversary proceeding, which arises in and relates to the above-captioned case under Title 11 and arises under Title 11.  This adversary proceeding is a "core" proceeding, which this Court may hear and determine, within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (I), and (O).

2.      Venue for this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409.

3.      This Court has jurisdiction to adjudicate the issues raised in this adversary proceeding by virtue of 28 U.S.C. § 1334.

### THE PARTIES

4.      Plaintiff Carla Morais ("Morais") is an individual who was and is a resident of Los Angeles County, California. She was an employee protected by the provisions of the Fair Employment & Housing Act ("FEHA"), Title VII of the Civil Rights Act ("Title VII"), as amended, and the California Labor Codes.

5.      Plaintiff Shirlei Silva ("Silva" and, together with Morais, "Plaintiffs") is an individual who was and is a resident of Los Angeles County, California. She was an employee protected by the provisions of the Fair Employment & Housing Act ("FEHA"), Title VII of the Civil Rights Act ("Title VII"), as amended, and the California Labor Codes.

6.      Defendant and Debtor Flavia Lanini ("Defendant" or "Lanini") is an individual and resident of Los Angeles County, California. Defendant is the debtor in the above-captioned chapter 7 bankruptcy case. Lanini was the Chief Executive Officer, owner, and founder of Flavia Lanini Beauty Institute. On May 31, 2022, Lanini filed a voluntary

petition for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy case.

## BACKGROUND FACTS

7.      The facts underlying this adversary proceeding are based on a civil rights employment case against Lanini and LBI for discrimination based on color, failure to pay employees minimum wage, amongst other wage-based and employment claims. Prior to the commencement of this bankruptcy case, on or about September 15, 2021, Plaintiffs filed a complaint against Lanini and one of her companies, Flavia Lanini Beauty Institute ("LBI") in the Los Angeles County Superior Court based on substantially the same facts as this complaint [LASC Case No. 21STCV34151]. The state court action was stayed by the bankruptcy petitions filed by Lanini and LBI.

8.      Lanini has established herself as a health and beauty expert who claims to have developed a Brazilian massage technique that has a slimming effect on the body. Her clientele has included models and celebrities like Alessandra Ambrosio, Candice Swanepoel, Kendall and Kris Jenner, Paris Hilton, and Dua Lipa, among others.

9.      Lanini has also marketed her own line of beauty products, including body lotions, that she sold at the Flavia Lanini Beauty Institute or on-line for approximately $100 a bottle. Lanini claims that her products contain luxury quality ingredients.  In actuality, the lotions are nothing more than Nivea brand combined with other cheap, generic lotions that are filled into bottles by low wage workers and sold as a luxury Flavia Lanini product at marked-up prices to celebrity and wealthy clientele.

10.      Lanini recruited Plaintiffs Carla Morais and Shirlei Silva to work as massage therapists at Flavia Lanini Beauty Institute in West Hollywood, California. Lanini has a public persona that is very different than what Plaintiffs experienced as employees working for Lanini and LBI.  On her social media platform, Ms. Lanini claims to respect and recognize beauty in all skin shades. However, in the workplace, she made derogatory comments about Plaintiffs for their dark skin color and stereotyped African Americans in

general, making comments such as, "***black people literally stink!***" Ms. Lanini also failed to protect Plaintiffs from sexually inappropriate conduct by its male clients during massage sessions. Ms. Morais and Ms. Silva and other employees had to endure Ms. Lanini's abusive conduct towards them as further described in this Complaint.

11.     Plaintiffs were originally hired as massage therapists at the LBI salon in West Hollywood for which they were to be paid $50 per massage. However, in addition to serving as massage therapists, Ms. Lanini required Plaintiffs to perform janitorial type duties during and outside business hours without compensation and without proper rest and meal breaks. Ms. Lanini misclassified Plaintiffs as independent contractors to evade the employee-protections of the Labor Codes. Ms. Lanini falsely reported to the IRS that she paid the Plaintiffs tens of thousands of dollars more than she actually paid them. In fact, Ms. Lanini did not pay Plaintiffs even minimum wage for their labor, and she took their tips for herself.

12.     Ms. Morais and Ms. Silva now bring this action to recover both compensatory and punitive damages for harassment, color discrimination, and retaliatory termination, to recover unpaid wages and other Labor Code remedies for being misclassified as exempt employees and to have such claims determined to be nondischargeable in Lanini's bankruptcy.

### FACTS PERTAINING TO PLAINTIFF CARLA MORAIS

13.     Lanini hired Morais on or about September 16, 2019 to work as a massage therapist at LBI at the rate of $50 per massage. Morais provided advanced massage services to LBI clients. Lanini represented to Morais that she would receive additional training necessary in order to provide massages with the alleged "special" techniques that Lanini supposedly learned and developed in Brazil. Those representations were false, and Morais never received such training.

14.     Prior to her employment with LBI, Morais was a freelance masseuse in Brazil. During Morais's job interview, Lanini confirmed that Morais's Brazilian license met

the requirements needed to provide massage services at LBI in accordance with the requisite U.S governmental protocols.

15.     In an attempt to evade Labor Code violations and obtain tax benefits, Lanini compelled Morais to provide her full social security number and insisted that Morais obtain an Individual Taxpayer Identification Number (ITIN), without explanation. Lanini then intentionally misclassified Morais as an independent contractor, rather than an employee.

16.     On or around December 26, 2019, in violation of California Business and Professions Code Section 16600, Morais was required to sign a "Non-Compete Agreement" in which Morais was prohibited from working at "*Any kind of SPA, Day SPA, Medical SPA that provide body and face lymphatic drainage massage under any kind of commercial name using "by hands" method or with auxiliaries machines*" and that "*this covenant shall apply to the geographical area of anywhere in the United States*" for a period of two years. California Business and Professions Code Section 16600 renders this contract "void." Lanini intentionally inserted the restrictive covenant to infringe on Morais's ability and right to earn an income elsewhere. Lanini never informed Morais that the alleged Non-Compete Agreement was not required and not enforceable. Lanini used the threat of the Non-Compete Agreement as one method of pressuring Plaintiffs to remain at LBI.

17.     On or about October 2, 2019, Morais attended a mandatory training session conducted by Lanini at LBI that lasted several hours. Morais was not paid for this mandatory training. After the training, Lanini required Morais to clean the premises for several hours, duties outside the scope of her position as a massage therapist. Lanini failed to compensate Morais for her attendance at this mandatory training and for the several hours Morais worked cleaning the LBI salon.

18.     On November 7, 2019, Lanini again instructed Morais to obtain her ITIN and a massage license, despite the fact that Lanini knew that Morais already had a massage license from Brazil. Lanini had previously represented that Morais's Brazilian license would suffice.

19.     On or about July 24, 2020, without prior written or verbal consent, Lanini caused LBI to deduct a license fee of $2,500 from Morais's paycheck. Morais was never provided with any copies of this supposed license after payment was deducted from her paycheck, nor did Morais undergo any training or examination to qualify or authorize her to obtain a license for which she was forced to pay.

20.     From the outset and throughout Morais's employment, Lanini required Morais to provide consecutive massages to LBI clients without breaks, from 8:00 a.m. until the close of business at 7:00 p.m. Frequently, Lanini required Morais to work beyond close of business hours, until around 9:00 p.m., without pay, to clean the salon and prepare it for the next day.

21.     On the days she was not providing massages, Lanini required Morais to come to the spa, clean and sanitize the spa, prep the massage room and usher clients into rooms, despite other employees being hired for this purpose. Morais was paid only for the massages she performed on clients, and not for the hours she performed cleaning and client receptionist duties. Morais was not compensated whatsoever for any and all additional responsibilities outside of massaging.

22.     Throughout Morais's employment, Lanini subjected Morais to verbal and physical abuse and failed to protect Morais from sexual harassment and misconduct by customers.

23.     On or about January 15, 2020, Morais prepared to perform massage services for a high-ranking executive from Tesla, Inc. Morais repeatedly reported to Lanini that she felt extremely uncomfortable in the presence of this client, due to his sexually inappropriate advances towards her. Instead of promptly investigating and taking action to protect Morais from third party sexual harassment, Lanini disregarded Morais's complaints and insisted that Morais provide the massage to the client, nonetheless.

24.     Morais obeyed Lanini's instructions and continued with the massage session for the Tesla executive client.  Following standard protocol, Morais asked  the client

to undress but to leave his underwear on.  However, Morais was shocked to find the Tesla executive client completely naked with his genitals exposed. Morais covered him with a sheet before asking him to lay down. Morais was horrified, moments later, when the client tried to have her place her hand onto his genitals. While trying to remain calm and professional, Morais explained that such type of (sexual) massages were not offered. The client nevertheless persisted and tried to place Morais's hand to his groin area. Morais snatched her hand away, trying to remain professional and ignore the client's relentless advances while trying to complete the massage as Lanini had instructed. Morais was frightened that the client might become even more aggressive or that she may be terminated if she does not complete the massage.

25.   Fearful of further sexual advances, Morais reported the Tesla executive's sexual harassment and assault directly to Lanini again.

26.   In response, rather than express concern or take action to protect Morais (and other employees from similar conduct from clients), Lanini admonished Morais and refused to believe her.  Lanini yelled "*no one would even look at you, **you're poor and black** and he's wealthy.*" Lanini then forbade Morais from ever repeating the incident again. Morais felt humiliated and traumatized, emotions she continues to experience to date.

27.   It was common for Lanini to make disparaging remarks based on the darker skin tones of her employees.  For example, Lanini claimed that she was forced to provide massages to darker skinned clients while "***holding her breath***" because "***black people always smell, they literally stink***."  Such generalized derogatory references to African Americans, and directed at Morais, caused her humiliation and emotional distress.

28.   After complaining of sexual harassment, Lanini retaliated by changing Morais's schedule in a way that diminished her income.  Whereas Morais was normally scheduled for work full days from 8:00 a.m. to 6:00 or 7:00 p.m. with massage clients scheduled throughout the day, she was reduced to having only two clients, with appointments in the early morning at  8:00 a.m., then the second client at the end of the

day, at 6:00 p.m. Lanini required that Morais remain at work and available to perform janitorial and other tasks during the workday. During this time, Lanini forbade Morais to take rest and meal breaks, and would verbally abuse her if defied. On such days, Morais was paid only $50 per massage, thereby only earning $100 for an 11-hour day. However, upon reviewing her pay records post termination, Morais learned that Lanini had actually only paid her $40 per massage.

29.    On or around March 3, 2020, Lanini travelled to Brazil. On March 27, 2020, during the height of the COVID-19 pandemic and notwithstanding local "stay at home" orders, Lanini ordered Morais to work and provide a massage at the home of a pregnant client. Morais refused, understandably concerned not only for her own welfare but that of the client. Lanini verbally attack Morais with expletives for refusing and threatened to terminate her.

30.    On or around April 21, 2020, Lanini again ordered Morais to provide home services to clients, despite governmental stay-at-home ordinances due to the pandemic. To avoid being subjected to expletives from Lanini, and because Lanini had repeatedly threatened to terminate her, Morais complied, despite fears of contracting the virus.

31.    On or about June 10, 2020, following Lanini's return from Brazil, Morais requested a private conversation with Lanini to discuss her abusiveness.

32.    Lanini ushered Morais into the kitchen, notably out of range of any cameras, where Lanini verbally attacked and berated Morais, stating that because she was "**black**" she needed to work harder to "*fight the stereotypes;*" that Morais needed to be more sexualized, to wear heeled shoes to counteract her *"stumpy frame;"* and that her clothes looked untidy and unacceptable, despite wearing a uniform like all the other massage employees. Lanini wrongfully blamed Morais for clients cancelling appointments during the start of the pandemic. Morais, as a result of suffering from psychological anxiety, sought and continues to undertake psychological counselling.

33.    On or about June 27, 2020, Morais again complained to Lanini about discriminatory and harassing treatment.

34.    As just another example of her abusiveness, on another occasion, Lanini scolded Morais for the size and smell of food contained in Morais's lunchbox. When Morais defended herself, Lanini physically grabbed Morais and dragged her by the arm into the kitchen, away from cameras and other employees. Morais defended herself and said that she would report Lanini to authorities regarding her labor code violations and unfair treatment. Lanini's unlawful conduct left Morais physically hurt, emotionally drained and psychology traumatized.

35.    On July 7, 2020, Lanini sent a group chat audio message, via WhatsApp, informing Morais, as well as other masseuses, that in addition to performing massage duties, they are expected to clean the spa. Lanini verbally attacked Morais and other masseuses in the call.

36.    On July 8, 2020, Lanini terminated Morais's employment via a WhatsApp message. Morais was not paid for massages undertaken on July 6, 2020, or July 7, 2020, let alone any of her shift work performing cleaning duties at the LBI throughout her employment.

37.    Throughout Morais's employment, Lanini confiscated Morais's tips, money rightfully earned by Morais.

38.    Following her termination, Morais learned that Lanini had falsely informed the IRS that she had paid Morais a higher amount than she was actually paid. Lanini claimed that LBI paid Morais $46,000 in wages or services, when in reality Morais did not even earn minimum wage, with a total closer to $10,000.  Lanini had persuaded Morais to obtain an ITIN under false pretense, explaining that it was required, thus enabling Lanini to improperly treat Morais as an independent contractor instead of a W-2 employee. This mis-classification of employee status worked to the benefit of Lanini (allowing her to

avoid various employer obligations and taxes) and to the detriment of Morais (depriving her of various employee benefits).

39.    Lanini engaged in a practice of repackaging already patented leading brand creams like Nivea, into LBI packaged bottles, and selling them as LBI products. Lanini would also import budget, cheap, non-fragrance creams in bulk from Brazil, before combining this with leading brand creams for fragrance, then packing the end product for sale at the LBI salon. Plaintiff and others were forced to perform the bottling and packaging of Lanini's "Lipo Sculpture" cream. Lanini's "Lipo Sculpture" cream retails at $100, when in reality, it is made for a fraction of the price. Lanini forced Plaintiffs to participate in her scheme to market the products falsely to customers as specialty luxury goods, thus further creating a hostile work environment.

### FACTS PERTAINING TO SHIRLEI SILVA

40.    Silva began working as a front desk assistant at LBI on or around February 3, 2020. Lanini required her to work from approximately 8:30 a.m. until typically 7:30 p.m., or even later. Lanini failed to pay Silva for approximately 58 hours of work.

41.    Lanini also required Silva to sign the same restrictive and void "Non-Compete Agreement" as provided to Morais and described above. As she did with Morais, Lanini used the Non-Compete Agreement as a threat to pressure Silva to remain working at LBI.

42.    On February 10, 2020, Lanini informed Silva that she needed a massage therapist. Because Silva had no license or experience, she initially declined the position. Lanini persisted and persuaded Silva to accept the massage therapist position by reassuring Silva that she would train her and that she will be given a training course in New York which is required to obtain her license.

43.    Like she did with Morais, Lanini intentionally misclassified Silva as an independent contractor, despite her being an employee, and misrepresented to Silva that his was required. Lanini never told Plaintiffs that they could have – and should have – been

9

classified as employees and that they would have benefitted from being classified as employees.

44.     From the outset, Silva would typically massage six clients a day at $40 per massage but was required to remain at LBI for its entire business hours. Silva was required to work consecutive days and long hours, providing successive back-to-back massages to clients without rest and meal breaks. Silva was paid less than minimum wage, not paid overtime hours, and not allowed to leave the premises.

45.     Silva quickly found herself undertaking duties beyond her massage therapist position. Lanini required Silva to arrive 1 hour before her shift, typically at 8:30 a.m., to clean and sanitize the spa, always without compensation. When Silva questioned why she was not being paid for this work, Lanini insisted it was Silva's "obligation" and that she "didn't have a choice." Lanini would also force Silva and Morais to arrive early to the salon to apply Lanini's makeup and treat her hair before the salon rush of clients, also without compensation.

46.     Lanini failed to train Silva to conduct massages at all, let alone using Lanini's special "technique."  However, a massage license mysteriously arrived in Silva's name. When asked how this license was obtained given that Silva had neither studied nor attended any course in New York as Lanini had explained, Lanini ignored the questions and declined to answer. On information and believe, the license was obtained fraudulently.

47.     Just like she did with Morais, during the COVID-19 pandemic, Lanini compelled Silva to provide home services to clients, despite the governmental stay-at-home ordinances. Although Silva initially refused, like Morais, she eventually acquiesced after Lanini threatened her with termination. Silva reluctantly performed home massages to Lanini's clients on March 26, 2020, April 8, 2020, April 24, 2020, and April 26, 2020, against her will and at great health risk.

48.     Throughout Silva's employment, Lanini subjected Silva to constant verbal abuse based on the color of her skin. Lanini made repeated derogatory and

humiliating comments, referring to Silva as "shit;" likening her face to a horse; claiming that because Silva was Black her hair was "out of control" and needed to be "fixed" before she came into work.  On one occasion, Lanini left her a verbally abusive WhatsApp message at 3:00 a.m.  Acts such as these resulted in Silva suffering from depression, for which she sought and continues to undertake to receive psychological therapy.

49.    On or around July 6, 2020, as a result of the constant verbal abuse and continued exploitation by Lanini, Silva, Morais and other employees began a WhatsApp support group to protest Lanini's unlawful and demeaning treatment. When Lanini learned of the group chat, she sent a scathing and abusive audio message to the employees.

50.    Two days later, on or about July 8, 2020, Lanini terminated Silva's employment via a WhatsApp message. Silva was not paid for the 6 client massages performed by her on July 6, and July 7, 2020, let alone for any of her shift work performing maintenance duties at LBI throughout her employment. In addition, Lanini routinely took Silva's gratuities given to her from massage clients, money rightfully earned by Silva.

51.    Following her termination, Silva contacted Lanini regarding her unpaid wages. Although Lanini informed Silva that she would receive her paychecks via mail, no such payment was ever received. Lanini later told Silva that she would receive her paychecks upon return of her uniform. However, when Silva returned her uniform, Lanini indicated that no final wage payment would be made as Lanini needed to "recoup" the money supposedly paid for the New York license that she was required to obtain.

52.    Lanini then immediately blocked Silva from phone calls and all social media platforms, preventing Silva from making any further contact with Lanini to demand her final wages.

53.    Like Morais, following her termination, Silva received an IRS 1099 tax form in which Lanini falsely reported that Silva had been paid $49,000, when in actuality she was paid only $11,700 in wages for the tax year.

54.      Lanini also made racially derogatory comments about Black people to and in front of Silva and forced Silva to bottle and re-package leading brand creams for LBI so that these products could be sold in the salon and via Lanini's online website. Silva complied out of fear of being terminated. As with Morais, forcing Silva to participate in this scheme furthered the already hostile work environment.

## FIRST CLAIM FOR RELIEF
### [Determination That Debt is Not Dischargeable – 11 U.S.C. § 523(a)(6)]

55.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 as though fully set forth herein.

## Color Discrimination and Harassment

56.      Lanini unlawfully discriminated against Plaintiffs a person with respect to the terms, conditions and/or privileges of their employment based on their color. Discrimination based on color by Lanini included but was not limited to continued derogatory remarks about Plaintiffs' skin color, failing to pay their proper wages because they had to "work harder" to defy supposed stereotypes of Blacks.

57.      Lanini's incessant color discrimination as described in this complaint was harassing. Lanini's derogatory comments about Plaintiffs' skin color, about Black clients and African Americans in general, along with her abusive conduct towards Plaintiffs were ongoing, pervasive, and/or severe. The totality of the circumstances created a hostile, intimidating and oppressive work environment for Plaintiffs whereby the conditions of their employment were adversely affected and violated the Fair Employment and Housing Act as promulgated in Government Code Section 12940 et. seq. and other state and federal statutes which prohibit discrimination and harassment in employment, including the California Constitution and the Civil Rights Act as amended.

## Sexual Harassment

58.      Lanini's actions described above in this complaint also constituted unlawful sexual harassment. Harassment of an employee and the creation of a hostile work environment based on gender is prohibited by California Civil Code §51.9 (the "Unruh Act"),

Government Code §12920 et seq., Government Code §12940 et seq., the Labor Code and public policy of the State of California as codified by Government Code §12920 and Code of Regulations §7290.6.

59.    Lanini created a hostile work environment for Morais by subjecting her and not protecting her from unwanted sexual behavior from third-party clients, despite Lanini having prior knowledge of sexual propensities of a massage client who was a high-ranking Tesla executive.

60.    Morais had previously made sexual harassment protected complaints to Lanini, but her complaints were ignored. Instead, Lanini compelled Morais to continue providing massage services to the harassing client, thereby subjecting her to unwanted sexual harassment and an unsafe work environment.

### Failure to Take Reasonable Steps to Prevent Harassment

61.    Further, despite Lanini knowing of the pervasive and or/or severe sexual harassment occurring in the workplace, Lanini failed and refused to take all reasonable steps required to prevent future harassment and sexual assault from occurring, which encouraged an environment where such discrimination, harassment, and retaliation was condoned, encouraged, tolerated, sanctioned, and/or ratified.

62.    Lanini failed or refused to take appropriate steps to abate or prevent discrimination and sexual harassment in the workplace by failing to enforce an effective policy against harassment, including third party client harassment, failing to investigate complaints of sexual harassment thoroughly and fairly, and failing to take prompt and appropriate disciplinary action against the perpetrator of sexual harassment. This failure encouraged the perpetrator's conduct to arise, fester and escalate.

63.    Defendant's conduct as described above constitutes a violation of Government Code Section 12940(k).

### Retaliation in Violation of FEHA

64.    In addition, Defendant's adverse actions against Plaintiffs as described in this complaint constitute unlawful retaliation against Plaintiff Morais for complaining about sex harassment and both Plaintiffs for complaining of unfair treatment and abuses because of their color and the hostile work environment they endured, all in violation of FEHA, Government Code § 12940(h) and done with willful and malicious intent.

### Non-Compete Agreements

65.    Lanini forced Plaintiffs to sign the Non-Compete Agreements and told them, falsely, that the agreements were enforceable, thus pressuring Plaintiffs to continue working for LBI even when they preferred to leave.

### Failure to Pay Minimum Wage

66.    Both Morais and Silva worked daily and weekly hours for which they were never paid for as alleged above. Lanini denied Plaintiffs the right to take rest and meal breaks. Lanini failed to compensate Plaintiffs during their rest and meal breaks.

67.    Lanini willfully and maliciously failed to pay any wages at all for hours that Plaintiffs worked performing janitorial, cleaning, sanitizing, and reception duties when not providing massages.

68.    Under California Labor Code § 1194, any employee receiving less than the legal minimum wage compensation is entitled to recover in a civil action the unpaid balance of the full amount of this unpaid compensation, including liquidated damages, interest thereon, reasonable attorney's fees, and the costs of suit.

### Failure to Pay Wages and Overtime

69.    Lanini failed to pay both Morais and Silva for daily and weekly overtime hours. Lanini, from the outset, required both Plaintiffs to work hours beyond eight hours in a day, or forty hours in a week, and never paid for those hours. Lanini failed to pay any overtime premium rates for the Plaintiffs' overtime hours, moreover Lanini failed to pay for

any wages for the hours at all.  Lanini acted willfully and maliciously by intentionally not paying Plaintiffs these wages to which they were entitled.

70.     Under Labor Code §1194, any employee receiving less than overtime premium wage compensation is entitled to recover in a civil action the unpaid balance of the full amount of this unpaid compensation, including interest thereon, reasonable attorney's fees and costs of suit. This action is also brought under Labor Code §510 and Section 3(A) of Wage Order No. 4 (Cal Code of Regs. §11090 (3)(A))., which requires employers to pay employees one-and-one-half (1-1/2) times the regular hourly rate for all those hours worked in excess of forty (40) hours in one week and/or in excess of eight (8) in one work day, and two (2) times the regular rate of pay for hours worked in excess of twelve (12) hours per day, unless such employees are exempt from the requirements of Wage Order No.4.

71.     In addition, under Labor Code § 2802(a) an employer must indemnify its employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.

72.     Plaintiffs incurred necessary expenditures in the performance of their job duties, namely, the costs of massage licenses. Lanini profited from deceptive behavior by, including but not limited to, obtaining fake licenses, requiring Plaintiffs to buy products for the salon from their own funds and travel expenses incurred from running errands for Lanini. Lanini consistently failed to reimburse Plaintiffs for these necessarily incurred business expenses.

### Failure to Reimburse Necessary Work Expenses

73.     In addition, Lanini deducted, with willful and malicious intent, from Plaintiffs' wages the costs of (fraudulent) massage licenses obtained illegally. Lanini did not obtain written or verbal consent from Plaintiffs throughout the process.

74.     Lanini illegally deducted monies from wages earned by the Plaintiffs based on Lanini's practice and policy. Lanini made illegal deductions from Plaintiffs' wages in violation of Labor Code §§ 221, and 558.

75.     As a result of the unlawful acts of Lanini described above, Plaintiffs have been deprived of reimbursement in amounts to be determined at trial; they are entitled to recovery of such amounts, plus interest and penalties thereon.

### Theft of Tips and Gratuities

76.     In addition, Lanini, acting with willful and malicious intent, collected, took, and received gratuities that were paid, given to, or left for the Plaintiffs by the customers.

77.     Plaintiffs and the customers were in an economic relationship that would have resulted in an economic benefit to Plaintiffs.

78.     Defendant knew of the economic relationship between the Plaintiffs and spa clients.

79.     Defendant intended to disrupt this relationship.

80.     Defendant did not remit any tips to Plaintiffs in violation of California Labor Code § 351 and the UCL.

### Failure to Provide Meal Breaks and Rest Breaks

81.     In addition, as indicated above, both Morais and Silva routinely worked through their allocated meal and reset periods. Lanini required both Plaintiffs to work beyond their job remit, by including but not limited to tasks such as cleaning and sanitizing the spa, washing laundry, and prepping and ushering clients, working whatever hours were necessary to aid Lanini, all illegally and all with willful and malicious intent.

82.     Plaintiffs believe they were not compensated for rest and meal breaks during each workday, the exact amount to be calculated at trial.

83.     Applicable IWC Wage Orders provide that no employer shall employ any person for a work period of more than five (5) hours without a meal period of not less

than thirty (30) minutes, and that rest periods of at least ten (10) minutes must be provided to employees per four (4) hours of work or major thereof. Labor Code § 226.7 provides that no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

84.    Applicable IWC Wage Orders and Labor Code §226.7 further provide that if an employer fails to provide an employee with a required meal or rest period, the employer shall pay the employee one (1) hour's wages at the employee's regular rate of compensation for each workday that a rest break is not provided.

### Retaliation for Complaining of Labor Code Violations

85.    In addition, Lanini's actions constituted unlawful retaliation done with willful and malicious intent. Plaintiffs complained of a hostile work environment, labor code violations such as failure to pay wages and provide meal and rest breaks and threatened to notify authorities of Lanini's unlawful conduct as described in this complaint.  Defendant violated Labor Code § 1102.5 (retaliation for complaining of labor code violations) by, among other things: instilling scare and bullying tactics; preventing Plaintiffs from disclosing information to a government or law enforcement agency, any public body conducting an investigation, hearing, or inquiry, if Plaintiffs have reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the Plaintiff's job duties; and by terminating Plaintiffs'' employment.

86.    Prior to the commencement of Lanini's bankruptcy case, Plaintiffs exhausted their administrative remedies by timely filing charges of discrimination and harassment on the basis of color with the Department of Fair Employment and Housing which has issued to each of the Plaintiffs right-to-sue letters authorizing them to sue Lanini.

87.    As a direct and proximate result of Lanini's acts and failures to act as alleged in this complaint, Plaintiffs have suffered and will continue to suffer economic,

physical, and emotional injuries. Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

88.    In addition, pursuant to California Government Code § 12965(b), Plaintiffs are entitled to their attorney's fees in prosecuting this lawsuit.

89.    Further, because Lanini's wrongful acts against Plaintiffs were carried out with malice, oppression or fraud, or were deliberate, willful and in conscious disregard of the probability of causing injury to Plaintiffs, as demonstrated by her actions and as described earlier in this complaint, Plaintiffs are entitled to punitive damages against Lanini for her conduct in order to deter her from such and similar conduct in the future.

90.    Lanini's  actions against Plaintiffs, as described above, were done willfully and maliciously. As a result of Lanini's willful and malicious conduct, her indebtedness to Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(6) in an amount to be proved at trial but in any event in excess of $500,000 each, plus interest, fees and costs.

<u>**SECOND CLAIM FOR RELIEF**</u>
**[Determination That Debt is Not Dischargeable – 11 U.S.C. § 523(a)(2)(A)]**

91.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 90 as though fully set forth herein.

92.    The representations and actions of Lanini described above, including but not limited to, misrepresenting to Plaintiffs that they were required to be independent contractors, misrepresenting that she would train Plaintiffs in her specialized massage technique, misrepresenting that Plaintiffs would receive formal massage training and obtain valid massage licenses, misrepresenting that Plaintiffs were bound by the Non-Compete Agreements, were knowingly false when made and intended to induce Plaintiffs to act thereon.

93.    Plaintiffs reasonably and justifiably relied on the misrepresentations and deceit of Lanini and had no reason to believe that Lanini was defrauding them.

94.     As a proximate result of Lanini's misrepresentations and deceit, Plaintiffs have sustained damages in an amount to be proved at trial but in any event in excess of $500,000 each, plus interest, fees and costs.

95.     Lanini performed these acts and omissions with malice, fraud and oppression and is therefore liable to Plaintiffs for punitive damages pursuant to California Civil Code § 3294.

96.     As a result of Lanini's false pretenses, false representations and/or actual fraudulent acts described above, Lanini's indebtedness to Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

**THIRD CLAIM FOR RELIEF**
**[Determination That Debt is Not Dischargeable – 11 U.S.C. § 523(a)(4)]**

97.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 96 as though fully set forth herein.

98.     Lanini's indebtedness to Plaintiffs based on the acts described above arose from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny including, without limitation, confiscating Plaintiffs' tips and gratuities, submitting false documents to the taxing authorities while in a fiduciary relationship with Plaintiffs, resulting in tax advantages to Lanini and LBI and damages to Plaintiffs, and wrongfully withholding salary, benefits and other compensation duly earned by Plaintiffs while acting in a fiduciary capacity. As a result, Lanini's wrongful actions constituted fraud and/or defalcation while acting in a fiduciary capacity.

99.     As a direct and proximate result, Plaintiffs have sustained damages in an amount to be proved at trial but in any event in excess of $500,000 each, plus interest, fees and costs.

100.    Lanini performed these acts and omissions with malice, fraud and oppression and is therefore liable to Plaintiffs for punitive damages pursuant to California Civil Code § 3294.

1

2          101.    As a result, Lanini's indebtedness to Plaintiffs is nondischargeable

3     under 11 U.S.C. § 523(a)(4).

4

5          WHEREFORE, Plaintiff prays for Judgment against Defendant as follows:

6          1.    A determination that the indebtedness owing to Plaintiffs by Defendant

7     is nondischargeable;

8          2.    For Judgment against Defendant in an amount to be determined at trial,

9     but no less than $500,000 per Plaintiff, plus interest thereon from the date of Defendant's

10    wrongful actions;

11         3.    For attorneys' fees and costs; and

12         4.    For such further relief as the Court may deem just and proper.

13    DATED: August 29, 2022          TONI J. JARAMILLA, A Professional Law Corp

14
                                      -and-
15
                                      LESNICK PRINCE & PAPPAS LLP
16

17
                                      By:  /s/ Matthew A. Lesnick
18                                        Matthew A. Lesnick
                                          Counsel for Plaintiffs Carla Morais and
19                                        Shirlei Silva

20

21

22

23

24

25

26

27

28